and others. Arguments not to exceed 15 minutes per side. Mr. Reed for the appellate. Good morning, your honors. Good morning. Arnold Reed on behalf of Mr. Briggs, who is the appellate. Before you get started, I just want to be real clear on what claims are you here on? I want to get the scope of the appeal very clear for all of us. There were some things at the trial level that were conceded, it appears, some that were stipulations. So what exactly is the claim or claims on which you appear today? That's an excellent question. Working backwards, it appears that at the trial court, the trial counsel for Mr. Briggs conceded his retaliation claim. So we will briefly touch upon that because we don't believe that that was conceded at the lower court. We also will argue the issue of whether or not malice has to be proven by Mr. Briggs in order to sustain a cause of action for to succinctly address because there was a lot of talk about that in the lower court. Did you reserve any rebuttal time before we burn it all up and then? You all have read this and are very familiar with the lower court record, so we don't believe that rebuttal will be necessary. Really? You're going to use all 15 right now? It may not be 15, but I'll make my points. Okay, fair enough. Having been a clerk on the court before, I've been through this before. Well, welcome back. Thank you so much. It's been a number of years. I would like to begin by addressing the facts of this case briefly because I think they're important and the facts in this particular case I believe will drive our application of the law, if you will. Essentially, June 16th or July 16th in 07, Carlos Briggs was hired as an assistant coach for UD Mercy. As soon as he was hired, things turned a little awry for Mr. Briggs. He began to notice some preferential treatment for one of his assistant coaches, Mr. Derek Thomas. In 2009, Mr. Briggs became aware of an affair between Mr. Thomas and the athletic director, Kerry Gaither. This began to spill over into Mr. Briggs' ability to do his job. One of the things that was happening is that the fellow players were hearing loud sexual noises, innuendos that went back and forth between the AD and the assistant coach. It got so bad at one point that the parents of some of the teammates began to call and complain to Mr. Briggs and other individuals at the university. That's when Mr. Briggs decided that he would begin to complain and step up his complaints, if you will. In 2012, he had a meeting with a gentleman named Mr. Nelson, who was the head of human resources. He met with Mr. Nelson on condition of anonymity. He did not want to come forward and be known and thrust himself into this affair business with the athletic director and the assistant coach. But he had to because at this juncture, the athletic director began retaliating against Mr. Briggs in terms of not letting him recruit certain athletes, not letting him go on visits and things of that nature. But she was giving advances and so forth to the person she was having the affair with. So Mr. Briggs anonymously filed a complaint through the whistleblower website of the university. Immediately after that, Ms. Gaither calls in Mr. Nelson, who headed the human resources, and demanded that she know who filed this internal complaint. And she mentioned Mr. Briggs. And Mr. Nelson didn't deny the fact that Mr. Briggs was the one that was making these complaints about the harassment and the favoritism. But based on the nature of the anonymous complaint, did Mr. Nelson say it was fairly obvious that it was either one or two people? Yes, she asked him specifically, Judge, whether it was Mr. Briggs. And he didn't deny that it was Mr. Briggs. After which, Ms. Gaither instructed UD officials to go to the media and badmouth Mr. Briggs about his days at Baylor, about being fired from Schoolcraft, which was a job he had previous to come into UD, and saying that Mr. Briggs was a piece of, pardon my language, shit. And so this UD official, Mort Meisner, communicated this to the media, a reporter named Perry Farrell. Mr. Briggs was called in shortly after a meeting on October 1st, where they accused him of trying to interfere with the assistant coach getting a job at Eastern Michigan. They never really investigated Mr. Briggs' complaint. How was this defamation claim, though, preserved at the lower court level? Because I have some serious concerns about whether that claim is actually properly before this court. I think it's a very close question here, Your Honor, but what I think preserves that claim, and I looked at that very closely, and I addressed that in my brief, but what I think preserves that claim is the court indicated that that claim had actually been waived. However, after indicating that, the court went on to extensively address Mr. Briggs' Title VII and retaliation claim. So our position, respectfully, is that by the court giving its extensive address to that claim, that the argument is moot in terms of whether that claim was waived. So that would be our position as to that. It was waived by the court giving extensive address to that issue. And we'll get to the specifics of that in a moment, but here's where we think, to the lower court, it ruled that Mr. Briggs was a limited public figure, and he had to establish malice. He did that. The lower courts indicated that Mr. Briggs was a public figure because he made the voluntary decision to play college basketball. He was a public figure because he was in the media as a basketball player, and that he received a certain degree of notoriety because he got drafted by the Santonio Spurs out of college. But Mr. Briggs never played a day for the Santonio Spurs. The court, we believe, should have applied the Gertz test, and the Gertz tells us that a public figure is one who, with respect to a limited range of issues, achieves a certain degree of status and, number two, voluntarily interjects himself into a public controversy. What should the lower court done? The lower court should have, one, isolated the public controversy, identify it. What is it? Is it the fact that Mr. Briggs is an athlete? Is it the fact that he was involved in this complaining? What was the public controversy? We would argue that this controversy, under Nails, has to be a real dispute and a matter of public interest, and the outcome, according to the court, has to affect the general public. Private concerns don't become public just because they get attention. We feel that the lower court didn't isolate what it was that made this, quote, unquote, a public controversy as required by Gertz. And here's where the facts, I believe, drive the law in the assessment that the court should have done in terms of whether or not Mr. Briggs voluntarily interjected himself into the public eye. We first need to look at the statements that were made as well. They pertain to Mr. Briggs' academic experience at Baylor, his experience as a college basketball player, and his experience as a coach at Schoolcraft. The court failed to explain how any of these issues was a public controversy that affected the general public in an appreciative way. First, with regard to interjecting himself, Mr. Briggs didn't report the affair until three years after it had begun. That hardly speaks of someone who wants to interject themselves into any type of fray. Number two, he met with human resources on condition of anonymity. He said specifically to Mr. Nelson, I don't want my name coming up. Conditioned upon that, I will meet with you. He files an internal complaint anonymously through the school's website. But then it is University of Detroit officials, Mr. Nelson and Mr. Meisner, that in fact out Mr. Briggs to the public. They out Mr. Briggs and they say that Mr. Briggs is the one who did that. The district court erred with regard to, again, the conversation about Mr. Briggs being at Baylor. That was over twenty years ago. He played at Baylor over twenty years ago and he was a coach at Schoolcraft six years before he even came to the University of Detroit. Mercy. At least some of the allegedly defamatory comments did pertain to his time as a student athlete there, right? At Baylor. That's correct. Couldn't one say that the comments did pertain to the particular matter that gave rise to his degree of notoriety in the public at that time? Not in the context we believe of C.F. Wilson v. Scripps Howard Court, which we treat at page twenty-six of our brief, where there the court held the plaintiff was not a public figure, where although seven years earlier he had acted in a manner that drew media attention to his cattle business. That was a situation where a gentleman was out in the media previously, had a big cattle business, drew a lot of attention to himself. But the court said that was seven years ago, so that didn't rise to the level of him being a public figure. The comment in that case, did it pertain to the cattle business stuff? His comments didn't pertain to the cattle business per se. That's the point of my question here is that it does pertain to his time as a student athlete at Baylor. I understand your point that hey, this is totally an incorrect statement, but the whole point of the malice requirement is that you get that sort of latitude and this does pertain. This would be as if the comment in the case you mentioned was about the cattle business. I think that's an excellent point too, Your Honor, but it hinges on a difference I believe between being what the court calls a person who is known to the public generally, but who calls himself a public figure. Just because you're generally known to the public doesn't necessarily cross the threshold and make you a public figure. And you have to look at the nature of those comments. We would argue that comments about whatever happened with Mr. Briggs at Schoolcraft, at Baylor University, those were private. Those were things regarding his private life, not anything regarding the general public. His grades, his academics, things of that nature are private. And public disclosure of private facts about a public figure does not make that person a public figure for purposes of the discussion on those issues. A public figure, if you will, always a public figure, but not always one. In the context of when you're making comments about private facts, we don't necessarily think that applies. His grades, his academics, again, are not private facts is what we would argue. So he wouldn't have to prove malice for that particular reason. We also would like to call the court's attention to Nails v. Hillsdale College, which is particularly interesting in this particular case and is somewhat controlling, I would argue. There, a university student was having an affair with the president. Turns out that that was his daughter-in-law. There was a young man there, the plaintiff, that had some involvement in writing stories on the internet and publicizing the fact that that incident happened. That case received national attention. In fact, there was an article about that particular incident in Vanity Fair. The plaintiff, who was tangentially involved, got kicked out of the university and he turns around and sues. Of course, the university said, no, you're a public figure and you have to show malice. There, the court said, and this is Judge Freeman in the Eastern District of Michigan, offering guidance on this point. He said, an affair between a college president and his daughter-in-law may be of interest to some portion of the reading public, the reading public, but it did not rise to the level of a public controversy. So therefore, the student was not a limited purpose public figure who had to establish malice. What about the district court's idea that, I mean the district court sort of expanded the idea of limited public figure here, beyond just voluntarily injecting oneself into a particular public controversy, but to say that certain sports figures by their status as such can have limited public figure status for purposes of commentary on their status as sports figures. As I understand it, some of the other circuits have accepted that idea, the Third, the Fifth, the D.C. Circuit, some older cases, but why shouldn't we agree with that idea, that you choose to go into this very public venue, so to speak, almost literally, and why shouldn't you be treated as a public figure for purposes of your actions in connection with that? If you look at Foss v. Delgado, Judge, it addresses that to some degree. There, a head basketball coach of a community college got involved in losing his job, bringing a lawsuit, and that was the argument that was raised. The mere fact that you choose to get into these venues is a necessary consequence you're going to be, quote unquote, a public figure. The Delgado court said that that's not the case, simply because you are a head coach or some other field where necessarily you are in the public. That does not necessarily make you a public figure just by your title. Why, though? That's what I'm asking. Why not? Because that rejects the other analysis of the prong. I'm sorry, go ahead. Well, I mean, the point is that these courts are not limiting themselves to that two-prong analysis. They're a different way that you can get to limited public figure status. And my question is, why isn't that right? I understand it doesn't meet the two prongs, but why isn't this a valid way? I think we have to look at it from the perspective of assuming what you're saying is accurate and you're right. We still have to look at what statements that are made about the particular public figure, like the long line of precedent does. Even if you are a public figure and there is disclosure about private facts, even if you are a public figure, you still have a cause of action without being or having to prove malice. So you still can be a public figure, but it depends on the disclosure of the facts. What are the natures of the disclosure? Certainly, if Carlos Briggs was at Baylor and he scored 50 points a game, he scored 60 points a game, I would have a much weaker argument because that's publicized. But grades are not publicized. Certain test scores, especially back then, are not publicized. That is a private fact that we just don't expose to the public just because we choose to be in the profession that gives us notoriety. Ergo, the distinction. He could have public notoriety, but that doesn't necessarily make him a public figure where he sacrifices private facts about his life. I understand that distinction. I appreciate that. Do we have any other questions from the panel? Thank you, Mr. Reed. Thank you so much. You all have a wonderful morning. Good morning, Your Honors. I'm Donald Miller on behalf of the Appleese in this case. I would like to start first with the Count 7 retaliation matter, if I could. The plain fact of the matter is that, and this is through no fault of Mr. Reed, who I've known for years, counsel in the court below, counsel for Mr. Briggs, did not oppose the summary judgment motion as it was directed to Count 7, which is the retaliation claim. You've probably looked at the brief. There's no section devoted to that argument. Now, on appeal to this court, Mr. Reed did the very best job that he could by saying the word retaliation was mentioned a couple of times in the brief to the lower court, and it's true that you'll find that word because the retaliation argument also applied to the Count 1 whistleblower claim, but there was no legal argument presented on the Count 7 retaliation claim. So you say that the retaliation claim is not really before this court because they didn't oppose it at the... They didn't oppose it at the district court level. The only thing that happened was that the judge... He still had to make a merits determination, though, to some degree. No, no, because there was no... He was saying it was forfeited. That's exactly what I'm saying. It was abandoned, it was forfeited. It is true that the court, the judge below, can I mention his name? Judge Cleland. We know who he is. I'm never sure of the protocol. Judge Cleland went on, in addition to noting that the claim was abandoned, he went on to say something. That's right. And I don't say this to be silly. He could just as well have gone on to say the mood is a blade of blue cheese. It doesn't change the fact that there was no opposition to that motion for summary judgment as it pertained to the Count 7 retaliation claim. But as Judge McCullough said, it's not just a default grant. I mean, the court still has to go through and make the merits determination whether there is a response or not. And I'm not saying that the no response preserves it, but it's not just a default grant. I guess I very, very respectfully disagree with you, Your Honor. I think if there's ample precedent in the Sixth Circuit and in the District Court, from which we came, which says that if a party moves for summary judgment, which we did, and it's unopposed, then that claim is forfeited and abandoned. I don't think Judge Cleland had to go on to make any determination. That's certainly what you're saying. It is true that he went on to say something as it pertained to what you have to do to show a Count 7 claim of retaliation. He said in the opinion, I do this primarily because it relates to the prior claim, which was the Count 6 claim of Title 7 discrimination to begin with, which isn't even raised on appeal in this court. And I can talk about the merits of that. I'm certainly, we discussed in our brief. I can certainly talk about it to this panel. In fact, maybe I will just very briefly. A plaintiff who wants to claim Title 7 retaliation has to show that he had a reasonable and good faith belief that what he was opposing was an unlawful violation of Title 7. And what Judge Cleland decided was that no reasonable jury could conclude based on what Carlos Briggs had presented, no reasonable jury could conclude that Briggs had a reasonable and good faith belief that what he was opposing was a Title 7 claim of gender discrimination. What was he opposing? Well, if you look at the internal whistleblower complaint that he filed, your honor, what he said in the internal whistleblower complaint was that he was an assistant coach at the University of Detroit Mercy and that the athletic director was having an affair with another assistant basketball coach and that as a result, Carlos Briggs was being disadvantaged. We don't agree with any of this, but he said that Carlos Briggs was being disadvantaged in terms of his ability to recruit other players. In other words, he never mentioned that he was being discriminated against on the basis of any prohibited characteristic such as his gender. All he said was the athletic director was having an affair with another basketball coach whose gender was unspecified and as a result, the paramour was receiving favoritism. That was his allegation in the internal whistleblower complaint. So the court below correctly noted that Briggs was never subjected to any physical or verbal conduct of a sexual nature. He never complained he was being treated differently because of his gender. He was only asserting that he was treated differently because he wasn't the paramour of the athletic director. In other words, he was just asserting generic, non-sex-based complaints about his working conditions. And that's basically what Judge Cleland, what is the word, gratuitously went on to say, even though he could just as well have stopped by saying that the claim had been forfeited or abandoned. So we don't, we appellees don't believe that the appellant should even have the opportunity to talk about Title VII retaliation on this appeal. Now, as for the defamation claim, does that answer the question? Yeah, I mean, as to whether he's a public figure, you would agree, I presume, that the district court and I presume you are arguing that we should adopt this new test for becoming a legal... I'm not even sure it's a new test, Your Honor. The appellant in his brief cited case after case after case, the exclusive focus of the appellant's brief was on whether Mr. Briggs had been thrust into some public controversy. But that's not the sole test. There are ample cases out there, and we've cited them in our brief, there are ample cases out there which say that a person's career and activities can also make them a limited person public figure for purposes of commenting on that person's career and activities. What's the difference between that, I guess, conceptually and a general purpose public figure, then? Well, a general purpose public figure, you can comment on anything going on in their life. I mean, if Donald Trump, for example, is probably a general purpose public figure, you could say anything about him, and as long as you didn't have actual malice, he'd have a defense. But what I'm saying about Carlos Briggs, Your Honor, is that he's a limited purpose public figure based on his career as a basketball player and as a high school and college basketball coach. And therefore, it's fair to comment on his activities as a player and as a coach. And that's all that was commented on here. Let me ask you this hypothetical. Let's assume, and this is just a hypothetical under this public figure doctrine, say Mr. Briggs played basketball in college, and then after he completed his college career, he then became employed at a university as a physical education teacher, not a coach, just a P.E. teacher, if they still have those in college. Would information regarding things that happened during his college career, grades or whatever, would that still be able to be commented on under this limited liability doctrine? I was almost able to agree with you, Your Honor, but you mentioned grades. No, that was a question. Grades aren't really an issue. Nobody commented on his grades. The fact is... It's a hypothetical. The fact is he was an all-state basketball player in high school, drew media attention. He went to Baylor University where he was the captain of the basketball team. He was kicked off the Baylor basketball team. There's absolutely no dispute about that. We've attached articles from the national media which show that he was kicked off the basketball team at Baylor University. So that would still be okay to come in even though he's a P.E. teacher now? Yes. I think there is ample precedent in the Sixth Circuit which says once you're a limited person, a public figure, or a limited purpose public figure, that that stays with you. You can still comment. It doesn't just evaporate. I was trying to give you this sequence. He was an all-state basketball player, drew national attention, captain at Baylor, got kicked off the team at Baylor. He's drafted by the Spurs as Mr. Reed said. He didn't play in the NBA but he did play in the Continental Basketball Association and he played in the Philippine Basketball Association where he was known as Red. Apparently he colored his hair red or something. He then came back to Michigan where he coached three different high schools. He became the head coach at Schoolcraft College which is a two-year community college where apparently he got in some trouble with National Junior College Athletic Association violations which were also reported in the media. We attached that below and in our brief. Well, not to our brief. It was attached in the court below. And then he went on to become an assistant coach at the University of Detroit Mercy and he's done recruiting. He's listed in the media guide. He has great relationships with reporters, witnessed the fact that he's got no trouble getting a hold of Perry Farrell, the Detroit News. In other words, what I'm trying to say, he's a limited purpose public figure based on his basketball playing days and his career as a coach. Limited purpose meaning we can comment not on any aspect of his life but on the fact that he was a basketball player and a coach. And those were the comments that were made. What about Mr. Reid's point that one of the comments pertained to his grades which is different than... There was never any comment about his grades. Mr. Reid was not counsel below. That was not... I don't know where that is in the briefs. I mean, I guess the person said he was kicked out of Baylor. He was kicked out of Baylor because he did something improper under the NCAA rules. He was dismissed from the team though. He wasn't kicked... But it wasn't for grades. It had to do with an automobile. He wasn't expelled from the university though. No, that's true. He was kicked off the Baylor basketball team. That's what the person seemed to have said, right? Well, this is summary judgment so I have to accept the worst of what was said. Carrie Gaither, who's my client, the athletic director, along with the University of Detroit Mercy, says that all she ever said was he was kicked off the basketball team at Baylor, which is a true statement. Mort Meisner testified that all I said, Mort Meisner said, was that he was kicked off the basketball team at Baylor. They produced affidavits which said that what Meisner said was he was kicked out of Baylor. Now, there is also a defense to that, as we pointed out in our brief, and that is that it's up to the appellant to prove the material falsity of the statement that was made. And you can certainly argue that the sting of the comment pertaining to Briggs at Baylor was that he was disciplined for misconduct by Baylor. And I'm not sure it's appreciably different to say that he was disciplined for his conduct as an athlete than to say he was disciplined for his conduct or misconduct as a student. In other words, is the sting any different to say he was kicked out of Baylor than to say he was kicked off the Baylor basketball team? But that's all written in the brief. The appellant focused exclusively on whether or not Briggs had to be thrust into a controversy. And as I've already said, I think that the other test is whether or not your career and your activities make you fair game for comment on that career and that activities. We've included the Joe Falls opinion, which is an unpublished decision in the Sixth Circuit. Mr. Falls tried to argue that he wasn't thrust into any public controversy, and therefore he shouldn't be a limited-purpose public figure. But the Sixth Circuit disagreed in that instance, and they said, no, no, no, you've been a career sports writer all your life, so people could certainly comment on your career as a sports writer. He didn't have to be thrust into any public controversy. As a preliminary matter, though, I wanted to say that... See, I'm running low on time here. I've got so much more I'd like to... Still green, but you're probably running short. There's a preliminary matter before you even get to the question of limited-purpose public figure, and that is that it was argued in the court below that there was no respondeat superior liability on the part of University of Detroit Mercy or Kerry Gaither for comments made by Mort Meisner. So that argument was made in the court below. Judge Cleland chose not to pick up on it, but it was certainly... We don't think he erred on the public figure analysis, but even if you come out on that end of the stick and say he did err, we still think that there was no respondeat superior liability because Mort Meisner was an independent contractor. He was not an employee of the University of Detroit Mercy. He was hired to help the players and coaches interact with the media, how to behave during interviews, how to comport yourself doing interviews, and that kind of thing. He was not authorized to make comments by the university to the media. In fact, there was specific testimony that Kerry Gaither or no one else, and no one else, authorized Mort Meisner to speak to the media about Carlos Briggs. So if Meisner was talking to this Mr. Corsack, who was an alum, or to Perry Farrell of the Free Press, about Carlos Briggs, Meisner was doing it outside the scope of his engagement on behalf of the university. And the Michigan law is very clear that an independent contractor can't create liability on the part of the principal for injuries that the contractor causes, particularly when outside the scope of his engagement. So there is another reason to affirm, namely, the respondeat superior liability argument. And then as to malice, the appellant in this case didn't really argue malice because he exclusively said that Briggs wasn't a public figure. So on the malice issue... So why are you going to argue about it? Well, I guess I don't have to. It's not being argued by the appellant. But they haven't made out the malice standard is all I'm saying, Your Honor. So unless there's any further questions... All right. Well, it looks like there aren't. Thank you, Mr. Miller. Thank you, Mr. Reed. Thank you. The case will be submitted. Appreciate it. Thank you. Thank you for both of your arguments.